# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**MARK GIRTLER**,

                Plaintiff,

v.                                                    **Case No. 15-cv-841-pp**

**CORRECTIONAL OFFICER
MR. WOLF,**

                Defendant.

---

**DECISION AND ORDER GRANTING THE PLAINTIFF'S MOTION
FOR LEAVE TO PROCEED IN FORMA PAUPERIS (DKT. NO. 2), SCREENING
THE PLAINTIFF'S COMPLAINT, AND RESPONDING TO PLAINTIFF'S
AUGUST 20, 2014 AND OCTOBER 14, 2015 LETTERS (DKT. NOS. 10, 11)**

---

      The plaintiff, a state prisoner, filed a *pro se* complaint under 42 U.S.C. §1983, alleging that the defendant violated his civil rights while the plaintiff was incarcerated at the Milwaukee County Jail. Dkt. No. 1. This order resolves the plaintiff's motion for leave to proceed *in forma pauperis,* Dkt. No. 2, and screens the plaintiff's complaint. It also responds to the letter the plaintiff sent to the court on October 14, 2015. Dkt. No. 11.

## I.    MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS

      The Prison Litigation Reform Act applies to this action because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. That law allows a court to give an incarcerated plaintiff the ability to proceed with his lawsuit without pre-paying the civil case-filing fee, as long as he meets certain conditions. One of those conditions is a requirement that the plaintiff

pay an initial partial filing fee. 28 U.S.C. §1915(b). Once the plaintiff pays the initial partial filing fee, the court may allow the plaintiff to pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On July 30, 2015, the court ordered the plaintiff to pay an initial partial filing fee of $23.60. Dkt. No. 7. The plaintiff paid that fee on August 20, 2015. Accordingly, the court grants the plaintiff's motion for leave to proceed *in forma pauperis*, and will allow him to pay the balance of the $350.00 filing fee over time from his prisoner account, as described at the end of this order.

## II. SCREENING OF THE PLAINTIFF'S COMPLAINT

### A. Standard for Screening Complaints

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint or portion thereof if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

A claim is legally frivolous "'when it lacks an arguable basis either in law or in fact.'" Denton v. Hernandez, 504 U.S. 25, 31 (1992) (quoting Neitzke v. Williams, 490 U.S. 319, 325 (1989)). The court may, therefore, dismiss a claim as frivolous where it is "based on an indisputably meritless legal theory" or where the factual contentions are clearly "baseless." Neitzke, 490 U.S. at 327. "Malicious," although "sometimes treated as a synonym for 'frivolous,' . . . is

more usefully construed as intended to harass." Lindell v. McCallum, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (internal citations omitted).

To state a cognizable claim under the federal notice pleading system, the plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). A plaintiff does not need to plead specific facts, and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, courts follow the principles set forth in Twombly. First, they must "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. A plaintiff must support legal conclusions with factual allegations. Id. Second, if there are well-pleaded factual

3

allegations, courts must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that the defendants: 1) deprived him of a right secured by the Constitution or laws of the United States; and 2) acted under color of state law. Buchanan-Moore v. Cnty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

B.  Facts Alleged in the Complaint

The complaint alleges that, on November 11, 2014, while he was in segregation at the Milwaukee County Jail, defendant Correctional Officer Mr. Wolf assaulted the plaintiff for no reason. Dkt. No. 1 at 3. The plaintiff also alleges that he received "nutra loaf" for lunch, although everyone else received a bagged lunch (the plaintiff does not state who gave him the nutra loaf). Id. The plaintiff states that he stuck his arm out of the door trap and "calmly" requested to speak to a lieutenant or sergeant about Wolf's mistreatment of him. Id. According to the plaintiff, Wolf yelled at him to put his arm back inside. Id. When the plaintiff refused, Wolf violently smashed and crushed his arm between the trap and the door, resulting in bruising, abrasions, and swelling. Id. The plaintiff states that he was forced to wait until the next day

before being allowed to see the nurse, although he does not explain who forced him to wait. Id.

### C. Legal Analysis of Alleged Facts

In the section of the complaint which asks the plaintiff to state his legal theory, the plaintiff states that "[a] prison doctor fails to respond appropriately or does not respond at all to your medical needs," and "[p]rison guards or other non-medical officials intentionally deny or delay your access to medical treatment." Id. at 4. These statements appear to the court to constitute the plaintiff's claim that prison staff members were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment's Cruel and Unusual Punishment Clause.

The plaintiff asserts that the defendant, Mr. Wolf, was a correctional officer at the Milwaukee County Jail. Id. at 2. He indicates that the event in question took place on November 11, 2014; it appears that at that time, he was detained in the Milwaukee County Jail awaiting trial on felony charges in Milwaukee County. State of Wisconsin v. Mark Anthony Girtler, 2014CF003214, available at https://wcca.wicourts.gov. "Incarcerated persons are entitled to confinement under humane conditions which provide for their 'basic human needs.'" Rice ex rel. Rice v. Corr. Med. Serv., 657 F.3d 650, 664 (7th Cir. 2012) (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). For pretrial detainees, "it is the due process clause of the Fourteenth Amendment rather than the Eighth Amendment's proscription against cruel and unusual punishment which is the source of this right." Id. (citing Bell v. Wolfish, 441

5

U.S. 520, 535-37 (1979)). Even so, "courts still look to Eighth Amendment case law in addressing the claims of pretrial detainees, given that the protections of the Fourteenth Amendment's due process clause are at least as broad as those that the Eighth Amendment affords to convicted prisoners." Id. (internal citations omitted).

To state an Eighth Amendment claim based on deficient medical care, a plaintiff must demonstrate two elements: 1) an objectively serious medical condition; and 2) an official's deliberate indifference to that condition. Arnett v. Webster, 658 F.3d 742, 750 (7th Cir. 2011) (citing Johnson v. Snyder, 444 F.3d 579, 584 (7th Cir. 2006)). A medical need is considered sufficiently serious if the inmate's condition "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would perceive the need for a doctor's attention." Roe v. Elyea, 631 F.3d 843, 857 (7th Cir. 2011) (quoting Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005). The Supreme Court has held that to prove that a defendant acted with "deliberate indifference," a plaintiff must prove more than just negligence, but does not have to prove that the defendant acted with the purpose of harming the plaintiff or with knowledge that harm would result; it is the equivalent of acting recklessly. Farmer v. Brennan, 511 U.S. 825, 835-36 (1994).

The plaintiff has not alleged sufficient facts to support a claim of deliberate indifference to serious medical need. He alleges that his arm was crushed between the trap and the door, resulting in serious bruising, swelling and other symptoms. While this may well have constituted a "serious medical

6

condition," the plaintiff has not alleged facts indicating that the defendant he has sued—Mr. Wolf—was deliberately indifferent to that need. The plaintiff states that he was "forced to wait to see the nurse," and that he was "forced to wait until the following day" to see the nurse, and thus had to endure pain and suffering. But he doesn't say *who* forced him to wait to see the nurse. He doesn't indicate whether defendant Wolf knew or had reason to know that he was injured, or whether it was Wolf who forced him to wait to see the nurse. In the legal theory section of his complaint, the plaintiff makes reference to the prison doctor failing to see him, and to prison guards or other non-medical officials intentionally denying or delaying access to medical treatment. But he hasn't sued any doctors, or even mentioned any doctors in the complaint. And he has not stated facts indicating that any prison guard or non-medical official intentionally denied or delayed his access to medical care. The court will not allow the plaintiff to proceed on a deliberate indifference claim against defendant Wolf.

While the plaintiff does not state it in his legal theory section, the facts he alleges appear to support an excessive force claim against defendant Wolf. Again, because the plaintiff was a pretrial detainee at the time of the incident he describes, the court analyzes his claims under the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment's Cruel and Unusual Punishment Clause. See Kingsley v. Hendrickson, 135 S.Ct. 2466, 2475 (2015).

7

The Supreme Court has held that in determining whether there was excessive force in violation of the Eighth Amendment, the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 599 U.S. 34, 37 (2010) (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)). The plaintiff is not required to prove "serious injury," id., although a court may consider the extent of the injury in determining whether the level of force applied was necessary to the particular situation. Id. (citations omitted). "An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." Id. (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)).

The plaintiff alleges that Wolf slammed the trap on his arm, crushing his arm between the trap and the door. The plaintiff claims that Wolf did this in response to the plaintiff calmly asking to speak to a lieutenant or sergeant. The court finds that these allegations are sufficient to state an excessive force claim against Wolf, and the court will allow the plaintiff to proceed on that claim.

Finally, the plaintiff alleges that while every other inmate received a bag lunch, he got "nutra loaf" for his dinner, and that he believes this was a "form of discrimination against his person."[1] It appears that the plaintiff is attempting to state an equal protection claim.

---

[1] "Nutriloaf (also spelled 'nutraloaf') is a bad-tasting food given to prisoners as a form of punishment (it is colloquially known as 'prison loaf' or 'disciplinary loaf')." Prude v. Clarke, 675 F.3d 732, 733 (7th Cir. 2012).

8

"The Equal Protection Clause forbids a state from arbitrarily treating one group of prisoners worse than another." Davis v. Milwaukee Cnty., 225 F. Supp. 967, 980 (E.D. Wis. 2002) (internal citations omitted).

> The Equal Protection Clause of the Fourteenth Amendment most typically reaches state action that treats a person poorly because of the person's race or other suspect classification, such as sex, national origin, religion, political affiliation, among others, or because the person has exercised a "fundamental right," or because the person is a member of a group that is the target of irrational government discrimination.

Abcarian v. McDonald, 617 F.3d 931, 938 (7th Cir. 2010).

The plaintiff appears to be alleging that he, and he alone, was subjected to a dinner of nutraloaf; "it seems that he is alleging a 'class of one' equal protection claim." Potts v. Moreci, 12 F. Supp. 3d 1065, 1075 (N.D. Ill. 2013). "A class-of-one claim need not allege discrimination based on a suspect classification, but must allege that the plaintiff was singled out arbitrarily, without rational basis, for unfair treatment." Abcarian, 617 F.3d at 938. "To make out a *prima facie* case, the plaintiff 'must present evidence that the defendant deliberately sought to deprive him of the equal protection of the laws for reasons of a personal nature unrelated to the duties of the defendant's position.'" Potts, 12 F. Supp. 3d at 1075 (quoting O'Sullivan v. City of Burbank, No. 02-C-2661, 2003 WL 22287349, at *5 (N.D. Ill. Sept. 30, 2003)).

The plaintiff has not alleged sufficient facts to support a "class of one" equal protection claim. He states that he believes he received a nutraloaf dinner as "discrimination," but he does not say why. He does not state on what basis he believes he was being discriminated against. He does not say who he

9

believes directed that he receive a nutraloaf dinner. The court will not allow the plaintiff to proceed on an equal protection claim.

### III. THE PLAINTIFF'S LETTERS

On August 20, 2015, the plaintiff filed a letter, notifying the court of his intention to file an amended complaint. Dkt. No. 10. As indicated in this order, the court has determined that the plaintiff may proceed on his excessive force claim against defendant Wolf, and has decided that he may not proceed against Wolf on his deliberate indifference and equal protection claims. Unless the plaintiff intends to allege excessive force claims against additional defendants, or make additional claims against Wolf, there is no need for him to file an amended complaint. A complaint need contain only a short, plain statement of the facts that support it—the plaintiff will have the opportunity at the next stage of the case to obtain discovery and to flesh out his claims in more detail.

On October 14, 2015, the plaintiff filed another letter. Dkt. No. 11. In this letter, the plaintiff indicates that he has asked the Milwaukee County Jail for documents relating to his claim, but that the jail has not responded. He also indicates that he continues to look for a lawyer to represent him, and explains why he believes it would be hard for him to represent himself. He then asks whether the court wants him to file various motions that he knows other inmates have filed in their cases.

The court understands that the plaintiff is not a lawyer, and does not know how to proceed. The court receives lawsuits from many inmates, most of whom are not lawyers and don't know how the law works. That is why, in the

10

court's orders, it provides some information to the parties as the case goes along.

It is likely that the reason the Milwaukee County Jail has not yet responded to the plaintiff's request for documents is because up to now, the court had not screened the plaintiff's complaint and decided whether he could proceed on any of his claims. The court now has done that, and the plaintiff will see from the order below that the next step is for the defendant to file an answer or to otherwise respond to the complaint. Once the defendant does that, the court will issue an order setting a schedule for the exchange of discovery.

The Federal Rules of Civil Procedure lay out the discovery process, which generally takes place between the parties, without the court's involvement. Fed. R. Civ. P. 33 allows a party to ask the other party to answer up to twenty-five (25) interrogatories (i.e., written questions) regarding the alleged events, and Fed. R. Civ. P. 34 allows a party to ask the other side to produce any reports or records the party believes are relevant to the alleged events. Fed. R. Civ. P. 5(d)(1) requires parties to serve their discovery requests and responses (i.e., interrogatories, requests for documents or tangible things, and requests for admission) directly on the opposing party. So, once the court sets a schedule for the exchange of discovery, the plaintiff should serve his discovery requests directly upon counsel for the defendant. See Fed. R. Civ. Pro. 5(b).

As for filing motions, the court cannot tell the plaintiff whether or not to file a motion. If he wishes to ask the court to do something, the proper

11

procedure for making a request is to file a motion. The court cannot guarantee that it will grant any motion the plaintiff files; the court will review each motion as it comes, and decide each one on a case-by-case basis. The court will advise the plaintiff, however, that it is too soon for him to file a motion to compel discovery, because the defendant has not answered the complaint and the court has not set a discovery schedule. Also, as the court indicated above, there is no need for the plaintiff to file a motion to amend the complaint unless he plans to add defendants or claims.

**IV.   CONCLUSION**

The court **GRANTS** the plaintiff's motion for leave to proceed *in forma pauperis* (Dkt. No. 2). The court **ORDERS** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from the plaintiff's prison trust account the $326.40 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the clerk of the court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The Secretary of the Wisconsin Department of Corrections or his designee shall clearly identify the payments by the case name and number assigned to this action.

The court **ORDERS** that the plaintiff may proceed on his excessive force claim against defendant Mr. Wolf.

The court **ORDERS** that pursuant to the informal service agreement between Milwaukee County and this court, copies of the plaintiff's complaint

12

and this order are being electronically sent today to Milwaukee County for service on defendant Mr. Wolf.

The court **ORDERS** that, pursuant to the informal service agreement between Milwaukee County and this court, defendant Mr. Wolf shall file a responsive pleading to the complaint within **sixty (60) days** of receiving electronic notice of this order.

The court **ORDERS** that the plaintiff shall submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the case. Because each filing will be electronically scanned and entered on the docket upon receipt by the clerk, the plaintiff need not mail copies to the defendants. All defendants will be served electronically through the court's electronic case filing system. The plaintiff should also retain a personal copy of each document filed with the court.

The court further advises plaintiff that if he does not timely file documents, the court may dismiss his case for failure to prosecute.

In addition, the parties must notify the clerk of court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

13

Case 2:15-cv-00841-NJ   Filed 10/16/15   Page 13 of 14   Document 12

The court will send copies of this order to the warden of the institution where the inmate is confined.

Dated at Milwaukee this 16th day of October, 2015.

BY THE COURT:

_____
HON. PAMELA PEPPER
United States District Judge